UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONNIE WARD, R02470, | ) |
|       Petitioner, | ) |
| v. | ) 20 C 0556 |
| ALEX JONES, Warden, | ) |
|       Respondent. | ) |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge**:

Before the Court is Petitioner Ronnie Ward's ("Ward") Petition for a Writ of Habeas Corpus. For the following reasons, the Court denies Ward's Petition and declines to issue a certificate of appealability.

**BACKGROUND**

**1. Factual Background**

State court factual findings enjoy a presumption of correctness absent clear and convincing findings to the contrary. 28 U.S.C. § 2254(e)(1); *Davis v. Ayala*, 576 U.S. 257, 271 (2015). The Court's analysis of the facts emerges against this backdrop.

Ward was convicted of first-degree murder and sentenced to 52 years of jailtime for the murder of his girlfriend Robin Davis ("Davis") with whom he had two children. *People v. Ward*, 2015 IL App (1st) 131798-U, ¶¶ 2-3.

1

At Ward's trial, Jack Sullivan ("Sullivan"), a key witness, testified that he drank with Ward and Davis on the night of January 23, 2012. *Id.* at ¶ 4. Ward could not locate his phone charger and he called Davis "dirty names," while also remarking "I got something for you." *Id.* at ¶ 5. Ward also asked Davis for money and she replied that the money was for their children. In response, Ward remarked: "I'm sick of you playing games with me. I got something for you, b****." *Id.* Thereafter, Ward pointed a .25-caliber handgun at Sullivan and remarked that he was joking, and that the handgun was unloaded. *Id.* at ¶ 6. Sullivan responded to Ward that there is "*always* one in the chamber." *Id.* (emphasis added).

Sullivan and Davis temporarily left to go to the store and to the neighbor's house. *Id.* at ¶ 7. When they returned, Davis went into her bedroom. *Id.* Once more Davis and Ward argued about money and Ward again said: "I got something for you, b****." *Id.* at ¶ 8. The same phone charger was lost once more and Ward "started throwing little tantrums by throwing everything out of the closet, looking for a charger to his phone." *Id.* at ¶ 9. Yet again, he told Davis "I got something for you." *Id.* Ward persisted to ask for money and once more Ward told Davis "B****, I got something for you." *Id.* at ¶ 10.

Ward then pulled the gun and pointed it at Davis, Sullivan, and the neighbor who was now in the house. *Id.* at ¶ 11. Ward then pointed the gun towards Davis and pulled the trigger. *Id.* After that, Sullivan heard Ward say: "I just shot my baby, I'm going to jail." *Id.* at ¶ 12. Ward then took money from Davis' bra and ran into the street "having

2

tantrums" and "hollering he done kill his baby, he fittin' to go to jail." *Id.* Pittman, the neighbor, recounted a similar version of events, including Ward yelling "I killed her, I killed her" after he shot Davis. *Id*. at ¶¶ 15-21.

## 2. Procedural Background

Ward was convicted in 2013 by a Cook County jury. Pertinent to this Petition, the Court had the following colloquy with Ward at trial concerning his constitutional right to testify on his own behalf:

> THE COURT: Mr. Ward, it's my understanding that your attorneys have explained to you that you have a constitutional right to testify in your own behalf; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You also have a constitutional right not to testify; do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: After discussing this with your attorneys, what is your wish? Do you want to testify in this case?
>
> THE DEFENDANT: No.

*People v. Ward*, 2019 IL App (1st) 170390-U, *appeal denied*, 135 N.E.3d 561 (Ill. 2019).

Ward pursued a direct appeal of his conviction and argued that the State (1) failed to prove beyond a reasonable doubt that Ward had the requisite intent for first-degree murder; and (2) deprived Ward of a fair trial by misstating evidence during closing arguments. As to the first argument, the Illinois Appellate Court held that the evidence

3

was sufficient to establish Ward's intent because of the "continuing argument between defendant and the victim," the "threat by defendant to kill the victim," "a warning from a third person that despite there being no clip in the handle of defendant's gun, there is 'always' a bullet in the chamber," and that defendant purposefully pointed the gun at Davis' head and fired. *Ward*, 2015 IL App (1st) 131798-U at ¶ 38. As to the second argument, the Illinois Appellate Court held that the prosecutor's fleeting remark did not misstate testimony about whether a bullet was "*always* in the chamber." *Id.* at ¶¶ 43-44 (emphasis added). These two claims were raised in a petition for leave to appeal ("PLA") to the Illinois Supreme Court, which was denied on November 25, 2015. *See People v. Ward*, 42 N.E.3d 375 (Ill. 2015) (Table).

On August 15, 2016, Ward filed a postconviction petition, which alleged that: (1) the trial court denied Ward due process by failing to provide complete transcripts of his trial and pretrial proceedings; (2) the trial court improperly vouched for the prosecutors by complimenting the attorneys of both parties; (3) the State improperly introduced evidence of Ward's criminal history; (4) trial counsel denied Ward his right to testify; (5) the State denied Ward a fair trial by making inaccurate and inflammatory statements throughout his trial, including telling the jury not to read the jury instructions; (6) Ward was denied the right to be present at two post-trial hearings; (7) the State violated Ward's right to confront witnesses by presenting victim impact statements at his sentencing; (8) the State mischaracterized the trial evidence at Ward's sentencing; (9) trial counsel was ineffective for failing to raise these issues before the

4

trial court; and (10) appellate counsel was ineffective for failing to raise these issues on direct appeal.

The trial court summarily denied this post-conviction petition. ECF No. #21-7, Ex. G at 13. On postconviction appeal, Ward argued that (1) direct appellate counsel was ineffective for not objecting to the jury instructions; (2) direct appellate counsel was ineffective for not raising the argument that the prosecutor told the jury to not "bother trying to read" the written jury instructions; and (3) he was denied his constitutional right to testify at trial. The Illinois Appellate Court rejected both arguments and upheld the trial court's dismissal of Ward's postconviction petition. *See Ward*, 2019 IL App (1st) 170390-U. Ward filed a PLA to the Illinois Supreme Court, raising only his claims that appellate counsel was ineffective and trial counsel provided an incorrect jury instruction. PLA, *People v. Ward*, No. 125157 (Ill.) (Ex. K) at 1-5. The Illinois Supreme Court denied the PLA on November 26, 2019. *People v. Ward*, 135 N.E.3d 561 (Ill. 2019) (Table).

Ward timely filed this Petition for a Writ of Habeas Corpus, which includes twelve distinct arguments.[1] In Claim One, Ward asserts that the evidence of his intent was insufficient to support his conviction. Pet., ECF No. 1 at 5-6, 8-9, 15-16. In Claim Two, Ward asserts that the prosecutor denied him a fair trial by misstating Sullivan's testimony during closing argument. *Id.* at 6-7, 9. And in Claim Three, Ward asserts

---

[1] The Court, being careful to address each of Ward's arguments, uses numeric labels that are different than Ward's to enhance the clarity of this Memorandum Opinion.

5

that trial counsel was ineffective for denying him the opportunity to testify at his own trial. *Id.* at 14-15. For the reasons discussed further below, the Court dismisses each of these claims on the merits.

The Petition also asserts other claims that never completed one full round of review in Illinois state court. In Claim Four, Ward alleges that the State made comments intended to inflame prejudice in the jury. *Id.* at 17-18. In Claim Five, Ward alleges that he never received the complete trial record. *Id.* at 10-11. In Claim Six, Ward alleges that he was denied his right to be present in court. *Id.* at 18-19. In Claim Seven, Ward alleges that the State improperly introduced evidence of Ward's prior criminal record. *Id.* at 13-14. In Claim Eight, Ward alleges that the trial court improperly "vouched" for the prosecutors by stating that they had not misstated evidence during closing arguments. *Id.* at 11-12. In Claim Nine, Ward alleges that he was denied his right to confront "inaccurate facts of hyperbole" during sentencing. *Id.* at 19-20. In Claim Ten, Ward claims that the State exaggerated the forensic expert's trial testimony at sentencing. *Id.* at 20-21. In Claim 11, Ward alleges that trial counsel was also ineffective for failing to raise all the previous claims (excepting Ground 3) in the trial court. *Id.* at 21-22. And in Claim 12, Ward alleges that appellate counsel was ineffective for failing to raise all the previous claims on direct appeal. *Id.* at 22-23. For the reasons discussed further below, the Court concludes that these claims are all procedurally defaulted.

## **DISCUSSION**

This Court can grant a petition for a writ of habeas corpus by a state prisoner only if he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under this statute, we must give "full effect" to state judgments that are consistent with federal law. *Williams v. Taylor*, 529 U.S. 362, 383 (2000). Thus, we apply a deferential standard of review and give the Illinois court rulings the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). At the same time, as a *pro se* litigant, we must construe Ward's petition liberally. *Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010).

**1. Claim One: The Evidence Was Sufficient For A Rational Trier Of Fact To Conclude Both That Ward Killed Davis And That He Intended To Do So.**

Ward's first claim is that the evidence was insufficient to convict him of first-degree murder because his mental state was at most reckless, not intentional. Pet., ECF No. 1 at 5. The Illinois Appellate Court disagreed. So do we.

To convict Ward of first-degree murder, the State had to prove that Ward (1) intended to kill or do great bodily harm to Davis; and (2) knew his acts created a strong probability of death or great bodily harm. 720 ILCS 5/9–1(a)(1), (a)(2). In making its case, the evidence sufficiently supports Ward's conviction when, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" "after viewing the evidence in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court also observes that "it is the exclusive

7

function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences." *United States v. Reed*, 875 F.2d 107, 111 (7th Cir.1989) (citation omitted).

Here, it is not unreasonable for the jury to have convicted Ward of first-degree murder. The evidence at trial reflected that Ward shot and killed Davis. The evidence also reflected that Ward and Davis had a continuing argument, that Ward threatened to kill Davis, and that a third-party warned Ward that there was *always* a bullet in the chamber. More granularly, Ward continuously threatened Davis before he pulled the trigger. For example, Ward remarked to Davis: "I got something for you." Shortly thereafter, Ward once again remarked: "I'm sick of you playing games with me. I got something for you, b*****." Yet again, Ward remarked "B*****, I got something for you." Taking this evidence together, the Illinois Appellate Court concluded that the evidence was enough to support a first-degree murder conviction. On habeas review, which imposes a "twice-deferential standard," we cannot overturn the Illinois Appellate Court's decision unless it was "objectively unreasonable." *Parker v. Matthews*, 567 U.S. 37, 43 (2012). After carefully reviewing the record, the Court concludes that the Illinois Appellate Court's decision was in no way objectively unreasonable.

2. **Claim Two: The Prosecutor's Closing Argument That Referenced A Bullet "In The Chamber" Did Not Misstate Trial Testimony or Prejudice Ward.**

Ward argues that the prosecutor's closing statement, which stated that "a bullet was in the chamber," materially and prejudicially misstated trial testimony. Pet., ECF

8

No. 1 at 6-7. On this issue, the Court agrees with Respondent—and the Illinois Appellate Court—that this statement did not misstate testimony or materially prejudice Ward.

When a petitioner challenges a prosecutor's closing argument, this Court considers (1) whether the prosecutor's remarks were improper; and (2) whether the remarks were prejudicial. *Clark v. Lashbrook*, 906 F.3d 660, 666 (7th Cir. 2018).

Ward's argument fails under the first prong of this test because the prosecutor's closing argument was not improper. During the trial, Sullivan testified that when Ward said the gun was unloaded that he told Ward that there is "*always* one in the chamber." *Ward*, 2015 IL App (1st) 131798-U, ¶ 6 (emphasis added). And, in closing, the prosecutor remarked based on this testimony that "a bullet *was* in chamber." *Id.* at ¶ 41 (emphasis added). No part of these two statements is contradictory; after all, if there is "*always* one in the chamber," then, logically, there was a bullet in the chamber. Admittedly, this linguistic parsing is a bit hyper-technical. But even were there one level of inference required for the prosecutor's statement to be accurate, that too would be permissible as a matter of federal law. *See United States v. Klebig*, 600 F.3d 700, 718 (7th Cir.2009) (prosecutors may "argue reasonable inferences from the evidence that the jury has seen and heard") (cleaned up). And, even were the comment improper, the Court concludes that the prosecutor's statement did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

### 3. Claim Three: The Argument That Trial Counsel Was Ineffective For Barring Petitioner From Testifying Is Procedurally Defaulted and Substantively Meritless.

Ward argues that trial counsel was ineffective for barring Ward from testifying. The Court agrees with Respondent that this claim is procedurally defaulted because the state court decided it on independent and adequate state grounds. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Specifically, the state court rejected Claim Three because Ward did not contemporaneously assert his desire to testify to the trial court. *Ward*, 2019 IL App (1st) 170390-U, ¶¶ 27-29. In Illinois, a defendant must "protest a lawyer's refusal to allow her to testify during trial to preserve the right." *Hartsfield v. Dorethy*, 949 F.3d 307, 315 (7th Cir.), *cert. denied*, 141 S. Ct. 270 (2020) (cleaned up). His failure to do so means he cannot prevail on this claim. *See generally id.*

Claim Three also fails because Ward cannot establish prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, Ward would have to demonstrate (1) a reasonable probability that he would have testified and (2) that there is a reasonable probability that his proposed testimony would have changed the jury's verdict. *Hartsfield*, 949 F.3d at 316. Ward cannot succeed under either prong. First, there is not a reasonable probability that he would have testified as such a claim is affirmatively rebutted by the record itself in this case. When asked if he wished to testify, Ward replied with a definitive "no." Second, without having some general idea of what his testimony would have been, the Court cannot conclude that such testimony

10

would have changed the jury's verdict. *See Hartsfield*, 949 F.3d at 316 (general denials of guilty are insufficient to establish *Strickland* prejudice). After all, "conclusory allegations" about a "non-criminal explanation of his conduct" are insufficient to establish prejudice. *United States v. Williams*, 934 F.2d 847, 852 (7th Cir. 1991).

### 4. Ward's Remaining Claims (4-12) Are Procedurally Defaulted.

Ward's remaining claims are procedurally defaulted because Ward did not present his claims in "one complete round" of state court review, including review by the Illinois Appellate Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999).

The Court will briefly discuss why on a claim-by-claim basis. *See generally* ECF No. 21-7 Ex. G; Ex. I; Ex. K. Claim Four—that the State made comments intended to inflame prejudice in the jury—was not raised on direct or postconviction appeal. *See id.* Neither was Claim Five, in which Ward alleges that he never received the complete trial record. *See id.* Neither was Claim Six, in which Ward alleges that he was denied his right to be present in court. *See id.* Neither was Claim Seven, in which Ward alleges that the State improperly introduced evidence of Ward's prior criminal record. *See id.* Neither was Claim Eight, in which Ward alleges that the trial court improperly "vouched" for the prosecutors by stating that they had not misstated evidence during closing arguments. *See id.* Neither was Claim Nine, in which Ward alleges that he was denied his right to confront "inaccurate facts of hyperbole" during sentencing. *See id.* And neither was Claim Ten, in which Ward claims that the State exaggerated the forensic expert's trial testimony at sentencing. *See id.* Because Ward did not pursue

11

these claims on appeal, they are procedurally defaulted. *See Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013) ("Procedural default generally precludes a federal court from reaching the merits of a *habeas* claim when the claim was not presented to the state courts and it is clear that the state courts would now find the claim procedurally barred.").

Admittedly, Ward did make several arguments on direct and postconviction appeal. On direct appeal, Ward made two arguments: first, that the State failed to prove that Ward had the requisite intent for first-degree murder; and second, that the prosecutor misstated evidence during closing arguments concerning there "always" being one in the chamber. The Court has already decided these on the merits above. And on postconviction appeal, Ward made only three arguments: first, that direct appellate counsel was ineffective for not objecting to the content of the jury instructions; second, that direct appellate counsel was ineffective for not raising the argument that the prosecutor told the jury to not "bother trying to read" the written jury instructions; and third, that Ward was denied his constitutional right to testify at trial. As to these points, Ward only raises the third issue in the instant Petition, which the Court has also addressed substantively above.

Claims 11 and 12—that trial and appellate counsel were ineffective for failing to raise "all previous grounds" listed in the habeas petition—are also procedurally defaulted. Ward did make these arguments in his postconviction petition, but he abandoned them on appeal before the Illinois Appellate Court. *See* ECF. No. 21-7, Ex.

12

M at 27-30; Ex. G at 23-20. His PLA to the Illinois Supreme Court also did not include these grounds. *See* ECF. No. 21-7, Ex. K.

In response to these procedural defaults, Ward argues that the Supreme Court's decision in *Murray v. Carrier*, 477 U.S. 478, 481 (1986) excuses his default as he only defaulted by virtue of his counsel's ineffectiveness. However, Respondent is correct on this point that "the assertion of ineffective assistance as a cause to excuse a procedural default in a [Section] 2254 petition is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). Thus, Ward cannot prevail on this argument. *See Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (applying *Lee*); *see also Sanchez v. Gaetz*, 2014 WL 1328762, at *4 (N.D. Ill. 2014).

*Edwards* still provides a narrow workaround for Ward: he could argue that there was a "fundamental miscarriage of justice," meaning "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *Ward v. Hinsley*, 377 F.3d 719, 725 (7th Cir. 2004) (cleaned up). But Ward has not made such an argument or showing. To the contrary, as discussed above, the evidence was clearly enough for a rational jury to conclude that Ward murdered Davis.

### 5. Ward Is Not Entitled To A Certificate of Appealability

The Court declines to issue a certificate of appealability. Ward cannot make a substantial showing of the denial of a constitutional right, namely that reasonable jurists

13

would not debate, much less disagree, with this Court's resolution of Ward's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Ward is advised that this is a final decision ending his case in this Court. If Ward wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Ward need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Ward wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion under Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## **CONCLUSION**

For the foregoing reasons, Ward's Petition is denied. The Court also declines to issue a certificate of appealability. Case terminated. It is so ordered.

Dated: 3/18/2021

_____
Charles P. Kocoras
United States District Judge